**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE PRETTY KITTY, INC.<br>Plaintiff,<br>vs.<br>SHIFT4 PAYMENTS, *et al.*,<br>Defendants. | Case No.: 2:25-cv-02294-GMN-EJY<br>**ORDER DENYING MOTION TO VACATE ARBITRATION AWARD** |

Pending before the Court is the Motion to Vacate Arbitration Award, (ECF No. 6), filed by Plaintiff The Pretty Kitty, Inc. Defendants Shift4 Payments, LLC and Citizens Bank, N.A. filed a joint Response, (ECF No. 17), to which Plaintiff filed a Reply, (ECF No. 23).

For the reasons discussed below, the Court DENIES Plaintiff's Motion to Vacate.

## I. BACKGROUND

This case arises from credit card payment processing services provided to Plaintiff The Pretty Kitty, Inc. by Defendants Shift4 Payments, LLC ("Shift4") and Citizens Bank, N.A. ("Citizens Bank"). In 2011, Plaintiff began using merchant processing services provided by Shift4 (then operating under a previous name). (Mot. Vacate 3:14–16, ECF No. 6). Between 2011 and 2019, Shift4 contracted with various acquiring banks, including Citizens Bank. (*Id.* 3:17–18). Acquiring banks, like Citizens Bank, are authorized to process payments from holders of credit and debit cards and sponsor independent sales organizations, like Shift4, to provide the processing services. (*Id.* 2:28–3:13).

Between 2011 and 2021, the parties entered into Merchant Processing Agreements ("MPAs") for each of Plaintiff's locations. (*Id.* 3:18–19). On August 5, 2020, the parties executed an MPA for Plaintiff's new location on Blue Diamond Road in Las Vegas, Nevada.

(*Id.* 3:21–23); (*see also* MPA, Ex. 1 to App. to Mot. Vacate, ECF No. 7). The MPA contains an Arbitration Clause whereby "MERCHANT AND COMPANY WAIVE THEIR RIGHTS TO SUE BEFORE A JUDGE OR JURY AND PARTICIPATE IN A CLASS ACTION AND AGREE TO RESOLVE ALL CLAIMS AND DISPUTES THROUGH BINDING INDIVIDUAL ARBITRATION." (MPA at 3, Ex. 1 to App. to Mot. Vacate). It directs the parties to "ARTICLE VII at www.shift4.com/legal." (*Id.*). That URL links to the MPA's Terms and Conditions containing the Arbitration Procedures, under which "any claim or dispute will be resolved on an individual basis by a neutral arbitrator whose decision . . . will be final except for a limited right of review under the [FAA]," and "the [FAA] governs everything related to arbitration." (July 2018 Terms & Conditions, art. VII, Ex. 5 to App. to Mot. Vacate, ECF No. 7); (Feb. 2022 Terms & Conditions, art. VII, Ex. 6 to App. to Mot. Vacate, ECF No. 7). Shift4 updated its Terms and Conditions in February 2022 when Citizens Bank became the acquiring bank, but the only changes were to the bank's name and address.

In January 2023, Plaintiff realized that it had not received deposits from the Blue Diamond location's transactions for most of 2022. (Mot. Vacate 4:6–7). It notified Shift4 of the issue and sought to recover the funds. (*Id.* 4:9). Plaintiff and Shift4 traced the issue to an error in the payment terminal at the Blue Diamond location. (*Id.* 4:9–13). According to Plaintiff, despite its "repeated attempts to request assistance and Shift4's knowledge as to the cause of the problem, Shift4 did not fix the issue or provide adequate solutions, resulting in severe financial loss." (*Id.* 4:13–15).

Plaintiff initiated arbitration proceedings against Defendants on August 14, 2023. (*Id.* 4:17–18). On January 5, 2024, Plaintiff filed a Preliminary Motion for Declaratory Relief, asking the Arbitrator to declare that the Arbitration Clause and Arbitration Procedures were unenforceable. (*Id.* 4:18–21); (*see also* Prelim. Mot., Ex. 2 to App. to Mot. Vacate, ECF No. 7). The Arbitrator denied the Motion, (Prelim. Decision, Ex. F to App. to Resp., ECF No. 16), and

the arbitration hearing was held in May and June of 2025. (Mot. Vacate 4:22–24). On August 22, 2025, the Arbitrator issued his Final Award, ruling in favor of Defendants. (*Id.* 4:25–5:2); (*see also* Final Award, Ex. 3 to App. to Mot. Vacate, ECF No. 3). Plaintiff then filed the present Motion to Vacate in this Court on November 19, 2025. (*See generally* Mot. Vacate).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. "Involving," as used in the FAA, is "broad" and "functional[ly] equivalent" to the word "affecting." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995). Even contracts involving intrastate economic activities where those activities, "in the aggregate," have a "substantial effect on interstate commerce." *Citizens Bank v. Alafabco*, 539 U.S. 52, 56–57 (2003) (internal quotations omitted).

If the FAA governs the arbitration agreement, the burden of establishing grounds for vacating an arbitration award rests on the party seeking vacatur. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co*, 591 F.3d 1167, 1173 (9th Cir. 2010). Review of the award is "both limited and highly deferential." *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004). Indeed, a federal court may only vacate an arbitration award in very narrow circumstances. Section 10(a) of the FAA states that a court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (quoting 9 U.S.C. § 10(a)).

A party seeking relief under § 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). An arbitrator does not exceed his or her powers by "interpret[ing] or apply[ing] the governing law incorrectly," *Kyocera*, 341 F.3d at 997, even when the error is "serious." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans*, 569 U.S. at 569 (internal quotations omitted). "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (internal quotations omitted).

## III. DISCUSSION

The Court first considers whether Plaintiff's Motion to Vacate is governed by Nevada law or by the FAA. The Court then proceeds to address the merits of the Motion to Vacate.

### A. Choice of Law

The parties dispute whether state or federal law governs Plaintiff's Motion to Vacate. Plaintiff presents its Motion pursuant to Nevada Revised Statute ("NRS") 38.241, which "provides the statutory avenues for a party to contest an arbitration award." (Mot. Vacate 5:11–22). Defendants contend that the Federal Arbitration Act ("FAA") applies to the dispute because the Terms and Conditions referenced in the MPA provide that the FAA "governs everything related to arbitration," and in the alternative, the FAA applies to the MPA because it covers "transaction[s] involving interstate commerce." (Resp. at 12–13, ECF No. 17).

Since Plaintiff challenges the enforceability of the Arbitration Procedures in the Terms and Conditions, the Court considers first whether the MPA involves interstate commerce such that it is within the purview of the FAA. Although Plaintiff's Reply reiterates that Nevada law should apply, Plaintiff does not dispute Defendant's invocation of the interstate commerce rule. (Reply 2:9–19, ECF No. 23).

Plaintiff is domiciled in Nevada, and its Blue Diamond location is in Nevada. (Mot. Vacate 5:5–8); (Resp. at 11). Shift4 is domiciled in Delaware, and its principal place of business is Pennsylvania. (Mot. Vacate 5:5); (Resp. at 11). Citizens Bank is domiciled in Rhode Island. (Mot. Vacate 5:5–6); (Resp. at 11). Consequently, all electronic transactions between Plaintiff and Defendants occurred across state lines, which affects interstate commerce. *See, e.g.*, *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007); *Paxson v. Live Nation Ent., Inc.*, 778 F. Supp. 3d 1113, 1123 (D. Nev. 2025). In addition, Shift4 provided and set up Plaintiff's physical payment terminals, (Mot. Vacate at 3:7–8, 4:9–10), thereby affecting interstate commerce by transporting goods across state lines. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943).

Accordingly, regardless of the enforceability of the Arbitration Clause or the Arbitration Procedures, any arbitration dispute arising from the MPA is governed by the FAA, not NRS 38.241.

**B. Arbitrator's Conduct and Final Arbitration Award**

Because Plaintiff erroneously construed its Motion to Vacate as arising under Nevada law, it does not directly address the § 10(a) factors until its Reply. In the Reply, Plaintiff contends that its claims satisfy the requirements of § 10(a)(4) because "the administrator exceeded his powers by issuing an irrational award and by manifestly disregarding the law." (Reply 3:21–4:5). According to Plaintiff, the Arbitrator's award was "irrational" because "there was no agreement to arbitrate . . ., rendering the award irrational as it cannot be derived

from the agreement." (Reply 4:7–8). Plaintiff also argues that the Arbitrator "manifestly disregarded the law" by failing to invalidate the Arbitration Clause in the MPA and ancillary Arbitration Procedures in the Terms and Conditions. (Mot. Vacate 12:12–14).

Underlying both of Plaintiff's § 10(a)(4) claims is its ongoing challenge to the enforceability of the Arbitration Clause and the Arbitration Procedures. (Mot. Vacate 5:24–6:3). It argues that "there was no meeting of the minds as to the arbitration provision as Pretty Kitty had no opportunity to review and agree to it" and that "the arbitration clause is both procedurally and substantively unconscionable." (*Id.* 6:12–27, 7:1–8:11). Plaintiff presented the same claims in its Preliminary Motion for Declaratory Relief, which the Arbitrator denied without prejudice. (Prelim. Decision at 3, Ex. F in App. to Resp.).

However, the Arbitrator interpreted the MPA and Terms and Conditions not just once, but twice. First, the Arbitrator considered Plaintiff's Motion for Declaratory Relief and denied it in a detailed six-page order. (*See generally* Prelim. Decision, Ex. F in App. to Resp.). To resolve the issues, the Arbitrator focused on the text and presentation of the Arbitration Clause and Arbitration Procedures and applied the relevant law. (*See generally id.*). The Arbitrator noted the genuine factual issues in the parties' dispute and explained that he could not invalidate the arbitration provisions before reviewing additional evidence at the arbitration hearing. (*Id.* at 4–5). Second, after a three-day arbitration hearing, the Arbitrator issued the eight-page Final Award. (*See generally* Final Award, Ex. 3 in App. to Mot. Vacate). The Arbitrator concluded that the Arbitration Clause and Arbitration Procedures were enforceable "[g]iven the lengthy history between [the parties] and the numerous contracts between them that incorporate the Terms and Conditions, [Plaintiff's] express acknowledgement of receipt of the Terms and Conditions, and the apparent availability of the terms and conditions at [the URL in the Clause]." (*Id.* at 4). He relied on the testimony given at the hearing and the documents submitted by the parties. (*See generally id.*).

"Twice, then, the [A]rbitrator did what the parties had asked: He considered their contract and decided whether it reflected an agreement" to arbitrate. *Oxford Health Plans*, 569 U.S. at 570. The Arbitrator interpreted the MPA and the Terms and Conditions to reach his conclusion, which "suffices to show that the Arbitrator did not exceed his powers." *Id.* Accordingly, the Court DENIES Plaintiff's Motion to Vacate the Arbitration Award.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Vacate Arbitration Award, (ECF No. 6), is **DENIED.**

The Clerk of Court is kindly directed to close the case.

**DATED** this _24_ day of September, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT